HATTIE SAUMS, Employee v. RALEIGH COMMUNITY HOSPITAL, Employer, CONTINENTAL INSURANCE COMPANY (CONTINENTAL LOSS ADJUSTING, ADJUSTING AGENT), CARRIER

No. 494PA96

(Filed 24 July 1997)

## Workers' Compensation § 235 (NCI4th)— job created for injured employee—no presumption of availability in job market

There is no presumption that a newly created, post-injury job offered to an employee is of a type generally available in the competitive job market. Therefore, the Industrial Commission did not err by finding that plaintiff, who had been employed as a housekeeper in defendant hospital when injured, was not required to return to a job as a quality control clerk which had been created for her to return to the workplace where the Commission found that the evidence was insufficient to show that the newly created job had not been so modified to fit plaintiff's limitations that it was ordinarily available in the job market.

### Am Jur 2d, Workers' Compensation §§ 395-399.

On writ of certiorari to review a unanimous decision of the Court of Appeals, 124 N.C. App. 219, 476 S.E.2d 372 (1996), reversing an opinion and award of the Industrial Commission entered on 22 March 1994 and remanding for entry of a new opinion and award. Heard in the Supreme Court 15 May 1997.

*Law Offices of Robin E. Hudson, by Robin E. Hudson, and Law Offices of Nancy P. White, by Nancy P. White, for plaintiff-appellant.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Thomas M. Clare and Mallory A. Taylor, for defendant-appellees.*

ORR, Justice.

Plaintiff-employee, Hattie Saums, sustained an injury to her back on 22 September 1989 while employed as a housekeeper at defendant Raleigh Community Hospital. On 23 October 1989, the parties entered into North Carolina Industrial Commission Form 21, which is an "Agreement for Compensation for Disability." The Form 21 agreement was approved by the Commission on 28 December 1989. The

agreement provided that defendants agreed to compensate plaintiff $168.01 per week for her disability continuing for the number of weeks deemed necessary. Plaintiff underwent surgery for her injuries in November 1989 and January 1990.

In March 1990, plaintiff was released to return to work with restrictions of "[lifting] no more than 25 pounds . . . [and] no prolonged climbing[] or crawling." Plaintiff resumed her job as a housekeeper at the hospital, but continued to complain of leg pain. Because of this pain, she once again left work to undergo further testing. However, the surgical reexploration and diagnostic tests revealed no evidence of any recurrent disc problems, and plaintiff returned to work. On 4 April 1990, after working for only two days, plaintiff reported to her orthopedic surgeon, Dr. David Fajgenbaum, that she had begun experiencing back and hip pain again. As a result of plaintiff's complaints, Dr. Fajgenbaum performed a laminectomy and fusion on plaintiff on 7 June 1990.

Plaintiff once again returned to work on 21 January 1991. Upon returning to her employment with defendant Raleigh Community Hospital, plaintiff was offered the position of quality control clerk. This position was, as stated by defendant's director of human resources, "a new position created for [plaintiff's] return to the work place." The duties of the quality control clerk included filing, coordinating quality control inspection sheets, counting linens, taking inventory of supplies, and picking up master checkout sheets. Subsequent to plaintiff's return to work, Dr. Fajgenbaum assigned a thirty percent permanent partial disability rating to plaintiff's back. Plaintiff continued to complain of an increase in pain and difficulty with her restricted work duty and left work on 7 February 1992. Between February and July of 1992, plaintiff had numerous additional tests, none of which revealed the cause for plaintiff's continued pain.

Plaintiff was paid compensation for several periods of temporary total disability through 1 July 1992, when she filed a Form 33 request for a hearing. The issues to be decided at the hearing were (1) whether plaintiff was entitled to compensation benefits from 7 February 1992 through 25 February 1992 and from 7 March 1992 through 21 July 1992, and (2) whether plaintiff was entitled to any additional compensation benefits beyond her medical release in December 1992. After the Form 33 was filed, plaintiff underwent additional surgery to remove the hardware used in the fusion. A Form

agreement was then prepared, which provided plaintiff compensation of $168.01 per week beginning on 22 July 1992 and lasting for the number of weeks deemed necessary. On 16 December 1992, Dr. Fajgenbaum released plaintiff from his care and stated in a letter to defendant hospital that he could not "find any hard reason why this patient should not be allowed to return to the job that was created by you which would eliminate any strenuous activities." However, plaintiff did not return to the position of quality control clerk. A controversy arose over whether plaintiff was required to return to the job that had been created for her return to the workplace or whether she had a right to continue receiving compensation benefits.

This case was heard before Deputy Commissioner Scott M. Taylor on 20 April 1993. Both parties presented evidence and submitted stipulated medical records. On 24 November 1993, the deputy commissioner issued an opinion and award granting, *inter alia*, compensation benefits for temporary total disability beginning 22 July 1992 and continuing "until plaintiff returns to work or defendants obtain permission from the Industrial Commission to cease payment of temporary total disability compensation, whichever first occurs." The deputy commissioner further found in his opinion and award that plaintiff's refusal to return to work in the "newly created" position was justified. The Industrial Commission affirmed the deputy commissioner's award on 22 March 1994.

Defendants appealed to the Court of Appeals, which, in a unanimous opinion, reversed the Commission and remanded for "entry of a new Opinion and Award." In the opinion below, the Court of Appeals held that "the Commission failed to give the employer the benefit of the presumption that the newly created job of Clerk was ordinarily available in the competitive job market." *Saums v. Raleigh Community Hosp.*, 124 N.C. App. 219, 221, 476 S.E.2d 372, 374 (1996). Plaintiff subsequently filed a petition for discretionary review with this Court. On 7 February 1997, plaintiff's petition was allowed as a writ of certiorari because the petition for discretionary review was not timely filed.

The principal issue in this case is whether the Court of Appeals erred in creating a presumption that a newly created, post-injury job offered to an employee is of a type generally available in the competitive job market. Plaintiff argues that no such presumption exists under North Carolina law. We agree with plaintiff and, accordingly, reverse the Court of Appeals.

"In order to obtain compensation under the Workers' Compensation Act, the claimant has the burden of proving the existence of his disability and its extent." *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 185, 345 S.E.2d 374, 378 (1986). To support a conclusion of disability, the Commission must find: (1) that the plaintiff was incapable after his injury of earning the same wages he earned before his injury in the same employment, (2) that the plaintiff was incapable after his injury of earning the same wages he earned before his injury in any other employment, and (3) that the plaintiff's incapacity to earn was caused by his injury. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). Further, our case law has consistently held that once a Form 21 agreement is entered into by the parties and approved by the Commission, a presumption of disability attaches in favor of the employee. *See Watkins v. Central Motor Lines, Inc.*, 279 N.C. 132, 137-38, 181 S.E.2d 588, 592 (1971); *Kisiah v. W.R. Kisiah Plumbing, Inc.*, 124 N.C. App. 72, 76-77, 476 S.E.2d 434, 436-37 (1996), *disc. rev. denied*, 345 N.C. 343, 483 S.E.2d 169 (1997); *Dalton v. Anvil Knitwear*, 119 N.C. App. 275, 282-83, 458 S.E.2d 251, 256-57, *disc. rev. denied and cert. denied*, 341 N.C. 647, 462 S.E.2d 507 (1995); *Radica v. Carolina Mills*, 113 N.C. App. 440, 447, 439 S.E.2d 185, 190 (1994). After the presumption attaches, "the burden shifts to [the employer] to show that plaintiff is employable." *Dalton*, 119 N.C. App. at 284, 458 S.E.2d at 257.

"[A]bsent a settlement with the employee, an award of [permanent partial] disability cannot be undone without resort to a lawful determination by the Commission that the employee's disability no longer exists—which will require the application of law to fact and, therefore, a hearing." *Kisiah*, 124 N.C. App. at 80, 476 S.E.2d at 438. N.C.G.S. § 97-83 provides, in pertinent part:

[I]f [the employer and employee] have reached such an agreement [for disability payments] which has been signed and filed with the Commission, and compensation has been paid or is due in accordance therewith, and the parties thereto then disagree as to the continuance of any weekly payment under such agreement, either party may make application to the Industrial Commission for a hearing in regard to the matters at issue, and for a ruling thereon.

N.C.G.S. § 97-83 (1991). The employee need not present evidence at the hearing unless and until the employer, "claim[ing] that the plaintiff is capable of earning wages[,] . . . come[s] forward with evidence

SAUMS v. RALEIGH COMMUNITY HOSPITAL

[346 N.C. 760 (1997)]

to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations." *Kennedy v. Duke Univ. Med. Ctr.,* 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990).

Here, a Form 21 agreement was signed by defendants on 23 October 1989 and provided that defendants agreed to compensate plaintiff $168.01 per week for her disability continuing for the number of weeks deemed necessary. The agreement was approved by the North Carolina Industrial Commission on 28 December 1989. Thus, plaintiff was cloaked in the presumption of disability, and the burden was on the employer to rebut that presumption.

In an attempt to rebut the presumption of disability, defendant hospital presented evidence demonstrating that the job as quality control clerk was available to plaintiff and paid the same wages plaintiff had earned prior to her disability. Defendant's director of human resources, Jo Zane, testified at the hearing and described the quality control clerk job as "a new position created for [plaintiff's] return to the work place." The job consisted of general office-type duties such as filing and answering the telephone, and counting linens. The evidence showed that no one else had been placed in the position, either before or after plaintiff held the job, and that ordinarily the duties were included in other jobs. Additionally, based on the job description stipulated into evidence by the parties, plaintiff was not qualified for the job. The "Position Summary" lists the job as requiring a high school education, while plaintiff had only a ninth-grade education.

Under the Workers' Compensation Act, disability is defined by a diminished capacity to earn wages, not by physical infirmity. N.C.G.S. § 97-2(9) (1991). However, the fact that an employee is capable of performing employment tendered by the employer is not, as a matter of law, an indication of plaintiff's ability to earn wages. *Peoples v. Cone Mills Corp.,* 316 N.C. 426, 434, 342 S.E.2d 798, 804 (1986). As this Court has previously stated:

> If the proffered employment does not accurately reflect the person's ability to compete with others for wages, it cannot be considered evidence of earning capacity. Proffered employment would not accurately reflect earning capacity if other employers would not hire the employee with the employee's limitations at a comparable wage level. The same is true if the proffered employment is so modified because of the employee's limitations that it is not ordinarily available in the competitive job market. The

rationale behind the competitive measure of earning capacity is apparent. If an employee has no ability to earn wages competitively, the employee will be left with no income should the employee's job be terminated.

*Id.* at 438, 342 S.E.2d at 806. The Court went on to conclude that

[t]he Workers' Compensation Act does not permit [defendant] to avoid its duty to pay compensation by offering an injured employee employment which the employee under normally prevailing market conditions could find nowhere else and which [defendant] could terminate at will or, as noted above, for reasons beyond its control.

*Id.* at 439, 342 S.E.2d at 806.

In this case, it has not been established that the quality control clerk position offered to plaintiff is an accurate measure of plaintiff's ability to earn wages in the competitive job market. There is no evidence that employers, other than defendant, would hire plaintiff to do a similar job at a comparable wage.

Based upon the principles enunciated by this Court in *Peoples*, it is clear that the presumption created by the Court of Appeals is contrary to the law which has been established in this area. Accordingly, we hold that there is no presumption that a newly created, post-injury job offered to an employee is of a type generally available in the competitive job market.

Having concluded that no such presumption exists. in North Carolina, we next address plaintiff's contention that the Court of Appeals erred by rejecting the findings of fact made by the Industrial Commission. Plaintiff argues that the Court of Appeals exceeded its scope of review by rejecting findings of fact which were fully supported by the evidence.

"In workers' compensation cases the Industrial Commission is the fact-finding body." *Stone v. G & G Builders*, 346 N.C. 154, 157, 484 S.E.2d 365, 367 (1997). "On appeal from an order of the Industrial Commission, '[t]he reviewing court's inquiry is limited to two issues: whether the Commission's findings of fact are supported by competent evidence and whether the Commission's conclusions of law are justified by its findings of fact.' " *Id.* at 157, 484 S.E.2d at 367 (quoting *Hendrix*, 317 N.C. at 186, 345 S.E.2d at 379). "When the Commission's findings of fact are supported by competent evidence, they are bind-

ing on the reviewing court in spite of the existence of evidence supporting contrary findings." *Hendrix,* 317 N.C. at 186, 345 S.E.2d at 379.

In the present case, the deputy commissioner made the following findings of fact regarding the plaintiff's post-injury employment:

13. On 16 December 1992, plaintiff was released to return to work by Dr. Fajgenbaum. . . . [A]fter the hardware removal surgery on 22 July 1992, plaintiff was capable of returning to work at the Quality Control Clerk position.

14. The Quality Control Clerk position, however, which [the hospital] offered plaintiff, was a new position which was created for plaintiff upon her previous return to work on 21 January 1991. There is insufficient evidence of record from which to determine by its greater weight that the newly created job position had not been so modified to fit plaintiff's limitations that it was ordinarily available in the competitive job market.

15. Following plaintiff's release to return to work on 16 December 1992, plaintiff refused to return to work as the Quality Control Clerk. Since the Quality Control Clerk position was a new position which was created for plaintiff upon her return to work, plaintiff's refusal to return to work in that position was justified.

Based on the deputy commissioner's findings of fact, he concluded that

[a]s a result of plaintiff's compensable injury on 22 September 1989, plaintiff is entitled to temporary total disability compensation at the weekly rate of $168.01, from 22 July 1992 and continuing until plaintiff returns to work or defendants obtain permission from the Industrial Commission to cease payment of temporary total disability compensation, whichever first occurs. Defendants, however, are entitled to a credit for the amount of compensation paid to plaintiff following 22 July 1992.

The full Commission affirmed the award issued by the deputy commissioner in a separate opinion and award.

As noted above, the Court of Appeals reversed and remanded this case for "entry of a new Opinion and Award," stating that the Commission erred by failing to "give the employer the benefit of the presumption that the newly created job of Clerk was ordinarily avail-

able in the competitive job market." *Saums*, 124 N.C. App. at 221, 476 S.E.2d at 374. Because no such presumption exists in North Carolina and because there is sufficient evidence to support the Commission's findings, we reverse the Court of Appeals. This case is remanded to that court for further remand to the Industrial Commission for reinstatement of its opinion and award.

REVERSED AND REMANDED.