Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, reverses the Deputy Commissioner's denial of benefits after 7 December 1995.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On 1 August 1995, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at the time of the alleged injury.
3. Liberty Mutual Insurance Company was the carrier on the risk.
4. Plaintiff sustained an injury by accident arising out of and in the course of the employment with defendant-employer on 1 August 1995.
5. Plaintiff's average weekly wage with defendant-employer was $296.69, yielding a compensation rate of $197.80.
At the hearing before the Deputy Commissioner, the following exhibits were introduced into the record:
1. Plaintiff's exhibits 1 through 3, and 5 through 14;
2. Defendants' exhibits 1 through 3;
3. Form 28B dated 29 July 1997; and,
4. A Pre-Trial Agreement dated 24 February 1997.
Subsequent to the hearing before the Deputy Commissioner, the parties entered the following documentation into the record:
1. Deposition of Dr. Andrew P. Bush dated 6 February 1997;
2. Deposition of Karen Nelson Frazie, dated 23 May 1997;
3. Deposition of Dr. Donald K. Bynum, Jr., dated 21 April 1997; and,
4. Deposition of Dr. Gary R. Kuzma dated 26 March 1997.
 ***********
Based upon all of the competent evidence adduced at the hearing, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At all times relevant to this proceeding, plaintiff did not have the necessary documentation to qualify as a legal immigrant, seek employment, or be employed in the United States. His brother, Felipe Olivarez Juarez, did have the necessary documentation to qualify as a legal immigrant, seek employment, and be employed in the United States.
2. On or about 4 June 1995, plaintiff obtained employment with defendant-employer using his brother's name and documentation. Defendant-employer was not aware of this misrepresentation. The evidence is insufficient to show that defendant-employer was aware of plaintiff's illegal status at the time of his hire.
3. On 1 August 1995, plaintiff, while operating a pressure hose, sustained an injury by accident to his left arm arising out of and in the course of the employment with defendant-employer. Plaintiff fractured the ulna and radius of his left arm and sustained laceration injuries to his left hand. Defendants had actual notice of plaintiff's 1 August 1995 injury on 4 August 1995.
4. On 14 August 1995, defendant-carrier executed a Form 63 notice to "Felipe Olivares Juarez" (plaintiff's brother) of payment of compensation without prejudice, pursuant to G.S. §97-18(d). On 24 August 1995, plaintiff filed a Form 18 notice of accident wherein he used his brother's name. The parties attempted to enter into a Form 21 agreement dated 28 September 1998, with plaintiff signing under his brother's name and with plaintiff's counsel co-signing. On 24 July 1996, the Industrial Commission declined to approve the Form 21 agreement because "the name listed for the employee was admittedly fictitious."
5. On 4 August 1995, plaintiff underwent surgery to repair his left arm fractures. During the course of the next several months, plaintiff underwent physical therapy and was regularly evaluated by Dr. Donald K. Bynum. On 7 December 1995, plaintiff was released by Dr. Bynum to return to modified duty right-handed (i.e., one-handed) work offered by defendant-employer. Dr. Bynum last saw plaintiff on 8 February 1996, and assigned him a 5% permanent partial disability rating to his left arm. Dr. Bynum restricted plaintiff for three months from lifting more than 25 pounds and from working with vibrating instruments or in the cold, but otherwise to return to normal activities.
6. The position offered to plaintiff by defendant-employer and approved by Dr. Bynum was a modified "one-handed" clean-up position that defendant-employer offered to plaintiff only as an injured worker. The position was not available to new job applicants and was not ordinarily available in the competitive job market. Although plaintiff was willing to accept this position, defendant-employer refused to re-employ him because he lacked the necessary immigration documentation allowing him to work in the United States.
7. Defendants paid plaintiff temporary total disability compensation from 1 August 1995 through 2 January 1996. Although plaintiff had not returned to work, defendants terminated plaintiff's compensation without filing an Industrial Commission Form 24 application pursuant to G.S. § 97-18.1, with the last payment of compensation occurring on 9 January 1996.
8. On 29 January 1996, plaintiff obtained a position with Quality Molded Products, where he inspected finished parts. The position required plaintiff to use his left arm to slide a door on the machinery he operated and lift boxes of parts. On 19 May 1996, plaintiff resigned due to complaints of pain and discomfort in his left thumb and forearm.
9. On 2 April 1996, plaintiff was examined by Andrew P. Bush, M.D., practicing in general orthopedic surgery in Durham, North Carolina. Dr. Bush found some weakness in plaintiff's thumb (which, combined with pain, would cause some diminishment of grip strength) and mild weakness in the left upper extremity. He anticipated that after four weeks of physical therapy, plaintiff's upper extremity would return to normal.
10. On 8 May 1996, plaintiff presented to Gary R. Kuzma, M.D., an orthopaedic surgeon and hand specialist, for an independent medical evaluation. Following a review of plaintiff's medical records and a physical examination, Dr. Kuzma was of the opinion that plaintiff was not suffering from significant dystrophic changes in his left hand and that any dystrophy present was probably fixed and may disappear in time. He was of the opinion on this date, and the Full Commission so finds, that plaintiff was at maximum medical improvement on 8 May 1996 and that he sustained a ten percent permanent partial disability to his left hand. Dr. Kuzma opined, and the Full Commission finds, that this ten percent would translate into a ten percent permanent partial disability rating for the left arm.
11. As a result of his injury on 1 August 1995, plaintiff was unable to return to his former position with defendant.
12. As a result of his injury on 1 August 1995, plaintiff sustained a ten percent permanent partial disability to his left arm.
13. On or about 3 August 1996, plaintiff began employment with Glendale Hosiery earning a lesser wage than he earned with defendant-employer.
 ***********
The foregoing findings of fact and conclusions of law engender the following
 CONCLUSIONS OF LAW
1. By awarding compensation in this case, the Commission is not condoning plaintiff's misrepresentations to defendant-employer nor his counsel's conduct in co-signing and filing documents with the knowledge that plaintiff's identity was false.
2. On 1 August 1995, plaintiff sustained an injury by accident which was compensable under the Act. N.C. Gen. Stat. § 97-2(6).
3. As a result of his compensable injury, from 1 August 1995 through 28 January 1996, plaintiff was incapable of earning his pre-injury wage at the same or other employment. Plaintiff is entitled to temporary total disability compensation payments from 1 August 1995 through 28 January 1996. N.C. Gen. Stat. §§97-2(9), 97-29.
4. The light duty position offered by defendant-employer in December 1995 does not show that plaintiff was capable of returning to suitable employment at pre-injury wages. Irrespective of defendant-employer's position that the job would have been available to plaintiff had plaintiff possessed proper immigration documentation, the job was not suitable employment under the law. Saums v. Raleigh Community Hosp.,346 N.C. 760, 487 S.E.2d 746 (1997).
5. Plaintiff is entitled to temporary partial disability compensation for the difference in his pre-injury wages and the wages he earned while working for Quality Molded Products and Glendale Hosiery, not to exceed 300 weeks from 1 August 1995. N.C. Gen. Stat. § 97-30.
6. As a result of his 1 August 1995 compensable injury, plaintiff sustained a ten (10) percent permanent disability rating to his left arm. N.C. Gen. Stat. § 97-31(13).
7. Defendants are obligated to provide to plaintiff such medical treatment as is reasonably required as a result of his 1 August 1995 injury by accident to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
8. Plaintiff did not fraudulently obtain workers' compensation benefits within the meaning of the Act. N.C. Gen. Stat. §97-88.2.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation benefits at the rate of $197.80 per week from 1 August 1995 through 28 January 1996, subject to a credit to defendants for payments made through 2 January 1996. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee approved in paragraph 4 below.
2. Defendants shall pay plaintiff temporary partial disability compensation benefits pursuant to G.S. § 97-30 for any partial wage loss suffered while plaintiff worked for Quality Molded Products and Glendale Hosiery, not to exceed 300 weeks from 1 August 1995, subject to the election addressed in paragraph 3 below. Such compensation as has accrued shall be paid in a lump sum subject to the attorney's fee approved in paragraph 4 below.
3. Plaintiff shall elect, as of 8 May 1996, whether to receive scheduled compensation pursuant to G.S. § 97-31 for his ten (10) percent permanent partial disability to his left arm or temporary partial compensation for his wage differential pursuant to G.S. § 97-30. If plaintiff elects the scheduled benefit under G.S. § 97-31, defendants shall pay plaintiff permanent partial compensation for twenty-four (24) weeks at the rate of $197.80 per week, subject to the attorney's fee approved in paragraph 4 below.
4. A reasonable attorney's fee of twenty-five (25) percent of the compensation due plaintiff under this award is hereby approved for plaintiff's counsel. To the extent that the compensation due plaintiff has accrued, twenty-five percent of any lump sum(s) due plaintiff shall be deducted and paid directly to plaintiff's counsel. Thereafter, plaintiff's counsel shall receive every fourth compensation check.
5. Defendants shall pay all reasonable medical expenses incurred or to be incurred in the future by plaintiff as a result of his 1 August 1995 compensable injury when bills for the same have been submitted through defendants and approved according to Industrial Commission procedures.
6. Defendants shall pay the costs.
7. The Full Commission, in its discretion, denies plaintiff's motion for the assessment of deposition copy costs.
8. Defendant's motion for sanctions is denied.
 S/ _____________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ _____________ THOMAS J. BOLCH COMMISSIONER
S/ _____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
RCR:mdg