Upon review of all the competent evidence of record with reference to the errors assigned, and upon review of the additional evidence received and admitted into evidence after the record was re-opened by the Full Commission for that purpose, and finding no good grounds to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and AFFIRMS IN PART the Opinion and Award of the Deputy Commissioner and makes additional findings and conclusions of law based upon evidence presented after re-opening the record.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement as:
 STIPULATIONS
1. The employee is Malichi L. Wilson.
2. The employer is Buddy Gregory's Body Shop.
3. The employer is a duly qualified self-insured with Consolidated Administrators as its servicing agent.
4. Defendant-employer regularly employs three or more employees and is subject to and bound by the provisions of the North Carolina Workers' Compensation Act. The Industrial Commission has jurisdiction of the parties and all parties have been properly named in this action. An employer/employee relationship existed between the employer and the employee on August 4, 1995.
5. The average weekly wage of the employee is to be determined by Form 22 Wage Chart submitted by Defendants.
6. The parties stipulate the following documents into evidence:
 (A) Industrial Commission Forms 18, 22, 61, 33, and 33R.
 (B) All medical records including those of Steven R. Van Giesen, D.C. and Dr. Randall L. Sherman.
(C) Plaintiff's recorded statement.
 ***********
Based upon all of the competent evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is a 44 year old male who is currently receiving social security disability benefits. Since completing the eighth grade, plaintiff has not received any type of formal education. He testified that he can do simple math, read pretty well other than difficult words, but can not write well. His other work experience has included working at C L Concrete intermittently for fifteen years as a mechanic and yard foreman responsible for such duties as driving a truck, pouring asphalt and concrete, repairing vehicles and equipment and operating tractors and other heavy equipment. Plaintiff also worked previously at Johnson BP for two years as a garage mechanic, responsible for such duties as changing engines and transmissions, tune-ups and oil changes. All of plaintiff's jobs required manual labor.
2. In January of 1993 plaintiff became employed as a front-end mechanic at defendant-employer's body shop where his duties included body work, front-end alignments, operating the frame machine and painting.
3. On Friday morning, August 4, 1995, a supplier delivered a Mustang clip to be used in repairing a damaged Mustang which was on the frame machine inside the body shop. The Mustang clip weighed several hundred pounds and consisted of the fenders, header panels and radiator supports. It was unloaded in the yard of the body shop. Around mid-day, plaintiff and a fellow employee attempted to carry the Mustang clip the fifteen to twenty feet from where it had been placed outside the body shop to where it was needed inside. This project was a part of plaintiff's assigned duties. As plaintiff, carrying one side of the heavy Mustang clip, was backing sideways, he experienced a popping sensation in his lower back followed by pain. Plaintiff thereby suffered a specific traumatic incident, resulting in a disabling right-sided disc herniation at the L4-5 level of his lumbosacral spine, manifested by the incapacitating back and right leg pain he subsequently developed.
4. Over the balance of the workday plaintiff's pain and stiffness in his lower back and leg worsened, and by the next day (Saturday), he was unable to return to work because of his pain and stiffness. Although plaintiff did return to work the following Monday, he continued to experience progressively worsening pain and stiffness.
5. Plaintiff notified defendant-employer that he injured his back at work and was in need of medical treatment and requested that arrangements be made for him to see Steven R. Van Giesen, the chiropractor who had treated the defendant-employer's wife.
6. Defendant-employer arranged for plaintiff to see Steven R. Van Giesen, D.C., on August 18, 1995 and plaintiff presented himself for treatment for his back injury on that day.
7. Plaintiff's condition did not improve with this chiropractic treatment, and he began developing numbness. Steven Van Giesen, D.C., referred plaintiff to a neurosurgeon, Dr. Randal Sherman of Elizabeth City. Dr. Sherman initially attempted a conservative course of treatment; but, when plaintiff's condition did not improve, he subsequently performed corrective back surgery on September 18, 1995. The surgical procedure was a right L4-L5 laminotomy and microsurgical diskectomy. At surgery plaintiff was found to have a significant free fragment disk herniation which was removed along with the center of the remainder of the disk.
8. When Dr. Sherman saw plaintiff following his surgery September 29, 1995, plaintiff "had no complaints of any problems at all". Dr. Sherman placed plaintiff in a physical therapy exercise course, which Dr. Sherman considered fairly routine procedure.
9. Dr. Sherman next saw plaintiff October 31, 1995, at which time plaintiff stated that he still had some pain in his back and right hip which would get worse with the prescribed exercises. Dr. Sherman found these subjective complaints inconsistent with his neurological exam of plaintiff which showed normal results. Dr. Sherman then ordered a number of additional diagnostic tests, including an EMG and nerve conduction studies, a CAT scan and an MRI — all of which were "normal" and did not show any evidence of nerve damage or any other basis for plaintiff's continuing complaints. These tests were done in December, 1995 and January, 1996.
10. Plaintiff was last seen by Dr. Sherman March 15, 1996 at which time Dr. Sherman released plaintiff to return to work with restrictions that he not lift in excess of thirty-five pounds or engage in prolonged or excessive bending or lifting. Dr. Sherman determined that plaintiff had reached maximum medical improvement and/or the end of his healing period following his August 4, 1995 back injury and corrective surgery, and that plaintiff retained a five percent permanent partial disability of the back as a result of his injury. Dr. Sherman felt that plaintiff was capable of working despite his permanent back injury, but due to plaintiff's lower back problems and obesity he would not recommend that plaintiff return to a job involving heavy physical labor. No weight is accorded to Dr. Sherman's opinion that plaintiff had reached maximum medical improvement or his rating.
11. Defendant was unable to offer plaintiff work within the restrictions placed upon him by Dr. Sherman and neither assisted plaintiff in finding other employment, nor introduced any evidence that any suitable jobs were available to plaintiff.
12. Plaintiff did not believe that he could return to work in any employment because of his continuing pain. He therefore sought a medical opinion from another physician on the extent of his disability. At plaintiff's request, Dr. Sherman referred him to Dr. Watson, a local orthopedic surgeon, for a second opinion; however, because Dr. Watson no longer treated back injuries, Dr. Watson referred plaintiff to Dr. Elizabeth Bullitt at North Carolina Memorial Hospital in Chapel Hill who in turn referred him to Dr. Blau, an anesthesiologist with special qualifications in pain management, also at N.C. Memorial Hospital.
13. Dr. Blau first treated plaintiff May 17, 1996, two months after his release to return to work with restrictions from Dr. Sherman. Dr. Blau opined that plaintiff was unable to work, especially work involving heavy lifting, and that plaintiff should not return to his former job and should participate in a vocational rehabilitation program. Dr. Blau prescribed different pain relieving treatments, but none of them seemed to help much. Dr. Blau had neurological tests conducted in October, 1996, which he believed provided an objective basis for plaintiff's symptomatology. He concluded that plaintiff's back and lower extremity complaints were consistent with the diagnosis of chronic active right L-5 radiculopathy. He wrote plaintiff out of work indefinitely on December 20, 1996 because of plaintiff's apparent nerve root injury and the fact that he was still undergoing evaluation and treatment for the symptoms relating to that. He opined that it was his sense at the time that it was unlikely that plaintiff would be able to go back to any job with a requirement for heavy lifting and that plaintiff would need to work with vocational rehabilitation to explore other vocational possibilities.
14. Plaintiff returned to Dr. Blau on January 31, 1997 complaining of some new symptoms, including pain and numbness in his right arm and numbness in his right foot which spread into all of the toes of his right foot. He also complained of episodes of falling. He was not benefiting from the prescribed medications and his weight-losing efforts had not been very successful.
15. On February 24, 1997 Dr. Blau gave plaintiff an epidural steroid injection. Dr. Blau still considered plaintiff disabled and still in need of vocational rehabilitation assistance.
16. Plaintiff returned to Dr. Blau for treatment on March 18, 1997, May 16, 1997, June 27, 1997, and October 10, 1997 on which occasions Dr. Blau noted that plaintiff was not responding to the prescribed therapies.
17. At the time of his deposition testimony on June 16, 1998, Dr. Blau was still of the opinion that plaintiff remained unable to work in his previous job or any other heavy physical job, but that perhaps there might be alternative vocational opportunities that might be considered for plaintiff; although, his size and "kind of limited capacity for retraining" might make that difficult. Dr. Blau never sent plaintiff for a Functional Capacity Evaluation, but referred him to Dr. Tawney at N.C. Memorial Hospitals Physical Medicine and Rehabilitation for a determination as to his suitability for alternative employment. Dr. Tawney first saw plaintiff July 12, 1996, but his findings are not a part of the record in this case.
18. Dr. Sherman and Dr. Blau have restricted plaintiff from returning to work in a job involving heavy labor. Plaintiff has not reached maximum medical improvement and needs Functional Capacity Evaluation and vocational rehabilitation assistance.
19. Greater weight is given to the opinions of Dr. Blau over those of Dr. Sherman on the extent of plaintiff's disability since Dr. Blau, an anesthesiologist, specializes in the treatment of pain and his diagnoses, conclusions, and recommendations are the most recent.
20. Plaintiff has proven by the greater weight of the evidence that he suffered an injury arising out of and in the course of his employment as a direct result of a specific traumatic incident of the work assigned by defendant-employer on August 4, 1995 and that this specific traumatic incident caused his herniated disk, resulting surgery and disability. Plaintiff has met his initial burden of showing that he became disabled as a result of a work-related injury. Defendant did not appeal from the decision of the Deputy Commissioner that the claim is compensable. Defendant also did not appeal from the decision of the Deputy Commissioner that plaintiff was disabled from August, 1995 through March 15, 1996.
 ***********
Based on the foregoing findings of fact and conclusions of law the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On August 4, 1995 plaintiff sustained an injury by accident or specific traumatic incident arising out of and in the course of his employment, resulting in a herniated disk and the need for surgery. N.C. Gen. Stat. § 97-2(6).
2. Initially, the injured employee has the burden of establishing the existence and extent of claimant's disability.Smith v. Sealed Air Corp., 127 N.C. App. 359, 361,489 S.E.2d 445, 446 (1997). "Disability" is defined as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9). Once disability has been established, the employee is "cloaked in the presumption of disability, and the burden is on the defendant-employer to rebut that presumption." Saums v. Raleigh CommunityHospital, 346 N.C. 760, 764, 487 S.E.2d 746, 750 (1997).
3. Since August 18, 1995, plaintiff has been totally incapable of returning to his prior job or any other job due to physical limitations caused by his work-related injury to his back. Plaintiff needs a Functional Capacity Evaluation and would benefit from vocational rehabilitation assistance to determine if he retains wage-earning capacity. Defendant has not proven that plaintiff has regained wage-earning capacity.
4. As a result of plaintiff's back injury, plaintiff was temporarily totally disabled from August 5, 1995 to August 7, 1995, and from August 18, 1995 and continuing. Plaintiff is entitled to compensation at a rate of $309.94 per week. N.C. Gen. Stat. § 97-29.
5. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendant is obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury giving rise hereto, including as part thereof the corrective back surgery Dr. Sherman performed as well as the earlier chiropractic treatment he received. N.C. Gen. Stat. § 97-25.
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff, on account of his temporary total disability, compensation at a rate of $309.94 per week during the periods from August 5, 1995 to August 7, 1995, from August 18, 1995 and continuing until further order of the Industrial Commission. All compensation which has accrued shall be paid in a lump sum without commutation.
2. A reasonable attorney fee in the amount of twenty-five percent of the compensation benefits due under the above Award is hereby approved for plaintiff's counsel. Twenty-five percent of the accrued compensation shall be deducted and forwarded directly to plaintiff's attorney; thereafter, plaintiff's attorney shall receive every fourth check.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendant shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto, including as part thereof the corrective back surgery Dr. Sherman performed as well as his earlier chiropractic treatment, when bills for the same are submitted in accordance with the Industrial Commission rules.
4. Defendant shall bear the costs, including as part thereof expert witness fees in the amount of $300 to Dr. Randal Sherman, $150 to Dr. Steven R. Van Giesen, and $250.00 to Dr. William S. Blau, each of whom appeared by way of deposition and gave expert medical testimony.
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_____________ MARY MOORE HOAG DEPUTY COMMISSIONER