The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pamela T. Young, the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of the Deputy Commissioner with some modifications.
***********
The Full Commission finds as fact and concludes as matters of law the following:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. At all relevant times herein the defendant was a duly qualified self-insured with Riscorp, Inc. as the servicing agent.
4. This matter was the subject of an Opinion and Award issued by Deputy Commissioner Jan Pittman filed 8 September 1995, which is incorporated herein by reference.
5. The plaintiff is receiving $260.00 per week pursuant to the Opinion and Award up to the present date and continuing.
6. The parties stipulated to the plaintiff's medical records marked at the hearing as stipulated exhibit #2.
***********
Based upon all of the competent evidence of record, the Full Commission adopts the findings of fact of the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. The plaintiff-employee suffered an admittedly compensable injury by accident to his back on 14 May 1993. The parties entered into an approved Industrial Commission Form 21 Agreement on 9 August 1993.
2. Following his injury, the plaintiff-employee came under the care of Dr. Kernodle, an orthopaedic surgeon. The plaintiff-employee eventually was returned to light duty work on 27 October 1993 and continued working until 5 May 1994.
3. On 5 May 1994, the plaintiff-employee aggravated his previous injury while moving a piece of steel while working for the defendant-employer. The plaintiff-employee then came under the care of Dr. Craig Derian, an orthopaedic surgeon. Dr. Derian eventually performed a lumbar laminectomy and decompression surgery on 19 July 1994. Although the plaintiff-employee's symptoms initially improved, the plaintiff-employee experienced renewed symptoms shortly thereafter, and Dr. Derian performed a lumbar decompression and stabilization and fusion at L4-sacrum on 6 December 1994.
4. The plaintiff-employee has not returned to work with the defendant-employer or any other employer since 5 May 1994 and has made no effort to return to gainful employment.
5. Prior to the 9 February 1998 hearing date, the plaintiff-employee testified in a sworn deposition that he had not used his tools for any type of work since leaving the employment of the defendant-employer. The plaintiff-employee further testified that he has not been able to use a ladder because he does not like to get up to a height where he can take a chance on falling. The plaintiff-employee further testified in his deposition that he has never participated in the construction of a storage building which was erected at his residence and that he does not perform any maintenance work on his vehicles.
6. Mr. David Ross, a licensed private investigator, observed and videotaped the plaintiff-employee on approximately fourteen different days between 10 May 1996 and 3 October 1997. The plaintiff-employee is shown in those videotapes engaging in a variety of outdoor activities, including unloading and carrying plywood up a ladder and onto a roof and loading tools and a toolbox into his van. He is also shown performing maintenance work on his automobile. He is shown climbing stairs and ambulating without difficulty. There is not a single incident in any of the videotaped evidence showing him using a walking cane or any other orthopaedic device, with the exception of a single instance when he was attending a medical appointment.
7. After the plaintiff-employee's last surgical procedure was performed, the plaintiff-employee presented to Dr. Derian during his follow-up appointments in a very consistent way, moving very slowly and stiffly from a sitting to a standing position, shifting positions frequently, limping on the right, and almost always carrying a cane. Based substantially on the plaintiff-employee's appearance and complaints, Dr. Derian recommended that the plaintiff-employee not return to his former job. However, after Dr. Derian reviewed the evidence from the private investigator, he noted a discrepancy between the limitations that the plaintiff-employee had described previously to him during the evaluations conducted concurrent with the surveillance, and the activities the plaintiff-employee was clearly able to perform on the videotapes.
8. Dr. Derian gave the plaintiff-employee a 30% rating to the back and would not release the plaintiff-employee to return to work prior to his review of the videotaped surveillance evidence. However, having reviewed the video surveillance, Dr. Derian testified that he should amend his rating and give the plaintiff-employee a 25% rating to the back.
9. Following Dr. Derian's review of the videotaped surveillance, particularly the 8 March 1997 surveillance of the plaintiff-employee sawing plywood and climbing a ladder with the plywood, Dr. Derian now believes the plaintiff-employee is capable of returning to work. Plaintiff-employee is capable of performing the work he was performing for the defendant-employer in electrical maintenance at the time of the originally compensable accident of 14 May 1993. The plaintiff-employee is also capable of returning to work in a variety of other jobs he performed prior to coming to work with the defendant-employer. The plaintiff-employee can work on a continuous basis for at least eight hours a day.
10. The plaintiff-employee's testimony regarding his ability to perform any type of work or to use tools and his complaints to Dr. Derian regarding the plaintiff-employee's disability following surgery and through his 23 February 1998 visit to Dr. Derian, is found by the Full Commission not to be credible. This is based upon the Deputy Commissioner's observations at the hearing of the plaintiff-employee's demeanor, voice intonation, body language, as well as inconsistencies in his testimony compared with the competent testimony of Dr. Derian and Mr. David Ross.
11. The defendants have rebutted the presumption of disability through the competent evidence of Dr. Derian and Mr. Ross. From and after 8 March, 1997, the plaintiff-employee is no longer disabled under the North Carolina Workers' Compensation Act and therefore the defendants are entitled to terminate the plaintiff-employee's ongoing temporary total disability benefits as of that date.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. An Industrial Commission Form 21 Agreement entered into by the parties and approved by the Industrial Commission creates a presumption of ongoing disability in favor of the employee. Saumsv. Raleigh Community Hospital, 346 N.C. 760, 763, 487 S.E.2d 746, ___ (1997). However, this presumption of continuing disability is rebuttable. Stone v. GG Builders, 346 N.C. 154, 157,484 S.E.2d 365, ___ (1997). Medical and other evidence tending to show that the plaintiff's claims are not credible, may be shown to rebut the presumption of disability. See Stone at 157-8. See also, Harrington v. Adams-Robinson Enterprises, ___ N.C. ___,504 S.E.2d 786 (1998).
2. In the instant case, the defendants have rebutted the presumption of disability and the defendants are entitled to terminate temporary total disability compensation benefits effective 8 March 1997, the date plaintiff first appeared able to return to work. Defendants are entitled to a credit for any temporary total disability benefits paid after that date.
3. The plaintiff is entitled to compensation at the rate of $260.00 per week beginning 8 March 1997 for 75 weeks for a 25% permanent partial disability rating to the back. However, said amount is subject to the credit allowed defendants for temporary total compensation paid subsequent to 8 March 1997.
4. Defendants shall pay all authorized medical expenses incurred by the plaintiff as a result of this injury by accident. N.C. Gen. Stat. § 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants shall pay permanent partial disability benefits for a 25% rating to the back at a compensation rate of $260.00 per week beginning 8 March 1997 for 75 weeks subject to a reasonable attorney's fee and also subject to a credit hereinafter awarded.
2. Defendants are entitled to terminate temporary total disability compensation benefits effective 8 March 1997. Defendants are entitled to a credit for any temporary total disability benefits paid after that date.
3. An attorney's fee in the amount of twenty-five percent (25%) of the compensation rate due plaintiff is hereby awarded to plaintiff's attorney as stated in Paragraph 1 of this Award.
4. Each side shall bear its own costs.
This 27th day of August 1999.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
S/_____________ BERNADINE S. BALLANCE COMMISSIONER