In accordance with the directive of the North Carolina Court of Appeals, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On 1 August 1995, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at the time of the alleged injury.
3. Liberty Mutual Insurance Company was the carrier on the risk.
4. Plaintiff sustained an injury by accident arising out of and in the course of the employment with defendant-employer on 1 August 1995.
5. Plaintiffs average weekly wage with defendant-employer was $296.69, yielding a compensation rate of $197.80.
At the hearing before the deputy commissioner, the following exhibits were introduced into the record:
1. Plaintiffs exhibits 1 through 3, and 5 through 14;
2. Defendants exhibits 1 through 3;
3. Form 28B dated 29 July 1997; and,
4. A Pre-Trial Agreement dated 24 February 1997.
Subsequent to the hearing before the deputy commissioner, the parties entered the following documentation into the record:
1. Deposition of Dr. Andrew P. Bush dated 6 February 1997;
2. Deposition of Karen Nelson Frazie, dated 23 May 1997;
3. Deposition of Dr. Donald K. Bynum, Jr., dated 21 April 1997; and,
4. Deposition of Dr. Gary R. Kuzma dated 26 March 1997.
 ***********
In accordance with the directive of the North Carolina Court of Appeals, and based upon the competent evidence of record, the full Commission makes the following additional:
 FINDINGS OF FACT
1. At all times relevant to this proceeding, plaintiff did not have the necessary documentation to qualify as a legal immigrant, seek employment, or be employed in the United States. His brother, Felipe Olivarez Juarez, did have the necessary documentation to qualify as a legal immigrant, seek employment, and be employed in the United States.
2. On or about 4 June 1995, plaintiff obtained employment with defendant-employer using his brothers name and documentation. Defendant-employer was not aware of this misrepresentation. The evidence is insufficient to show that defendant-employer was aware of plaintiffs illegal status at the time of his hire.
3. On 1 August 1995, plaintiff sustained an injury by accident to his left arm arising out of and in the course of the employment with defendant-employer. Plaintiff fractured the ulna and radius of his left arm and sustained laceration injuries to his left hand. Defendants had actual notice of plaintiffs 1 August 1995 injury on 4 August 1995.
4. On 14 August 1995, defendant-carrier executed a Form 63 notice to "Felipe Olivares Juarez (plaintiffs brother) of payment of compensation without prejudice, pursuant to G.S. 97-18(d). On 24 August 1995, plaintiff filed a Form 18 notice of accident wherein he used his brothers name. The parties attempted to enter into a Form 21 agreement dated 28 September 1998, with plaintiff signing under his brothers name and with plaintiffs counsel co-signing. On 24 July 1996, the Industrial Commission declined to approve the Form 21 agreement because "the name listed for the employee was admittedly fictitious.
5. On 4 August 1995, plaintiff underwent surgery to repair his left arm fractures. During the course of the next several months, plaintiff underwent physical therapy and was regularly evaluated by Dr. Donald K. Bynum.
6. As a result of his injury on 1 August 1995, plaintiff was unable to return to his former position with defendant.
7. On 7 December 1995, Dr. Bynum released plaintiff to return to a modified duty, right-handed (one-handed) "clean-up position offered by defendant-employer. Dr. Bynum last saw plaintiff on 8 February 1996, and assigned him a 5% permanent partial disability rating to his left arm. Dr. Bynum restricted plaintiff for three months from lifting more than 25 pounds and from working with vibrating instruments or in the cold, but otherwise to return to normal activities.
8. The position offered to plaintiff by defendant-employer and approved by Dr. Bynum was offered to plaintiff only because he was an injured worker. The position was not available to new job applicants and was not ordinarily available in the competitive job market. Plaintiff would have been able to perform the job only by using one hand. Although plaintiff was willing to accept the position, defendant-employer refused to re-employ him because he lacked the necessary immigration documentation allowing him to work in the United States. The availability of the clean-up job, but for plaintiffs illegal status, did not demonstrate that plaintiff was able to compete with others for wages. Due to his injury, plaintiff was unable to return to gainful employment on 7 December 1995.
9. Defendants paid plaintiff total disability compensation from 1 August 1995 through 2 January 1996. Although plaintiff had not returned to work, defendants terminated plaintiffs compensation without filing an Industrial Commission Form 24 application pursuant to G.S. 97-18.1, with the last payment of compensation occurring on 9 January 1996.
10. On 29 January 1996, plaintiff obtained a position with Quality Molded Products, where he inspected finished parts. The position required plaintiff to use his left arm to slide a door on the machinery he operated and to lift boxes of parts. On 19 May 1996, plaintiff resigned due to complaints of pain and discomfort in his left thumb and forearm. Because of his work-related injury, plaintiffs employment at Quality Molded Products was not suitable, and this attempt to return to work was unsuccessful.
11. On 2 April 1996, plaintiff was examined by Andrew P. Bush, M.D., practicing in general orthopedic surgery in Durham, North Carolina. Dr. Bush found some weakness in plaintiffs thumb (which, combined with pain, would cause some diminishment of grip strength) and mild weakness in the left upper extremity. He anticipated that after four weeks of physical therapy, plaintiffs upper extremity would return to normal.
12. On 8 May 1996, plaintiff presented to Gary R. Kuzma, M.D., an orthopaedic surgeon and hand specialist, for an independent medical evaluation. Following a review of plaintiffs medical records and a physical examination, Dr. Kuzma was of the opinion that plaintiff was not suffering from significant dystrophic changes in his left hand and that any dystrophy present was probably fixed and may disappear in time. He was of the opinion on this date, and the Commission finds, that plaintiff was at maximum medical improvement on 8 May 1996 and that he sustained a ten percent permanent partial disability to his left hand. Dr. Kuzma opined, and the Commission finds, that this ten percent would translate into a ten percent permanent partial disability rating for the left arm.
13. Even if plaintiff had had proper work documentation, the medical restrictions imposed because of his work-related injury, in addition to his inability to speak English and lack of skills, rendered plaintiff incapable of returning to suitable employment from 1 August 1995 through sometime in May 1996, after he reached maximum medical improvement.
14. As a result of his work-related injury, plaintiff retained some residual left arm discomfort through the date of the hearing before the deputy commissioner. The evidence, however, fails to show how and to what extent plaintiffs work-related injury affected his wage loss after 19 May 1996.
15. There is insufficient evidence that plaintiffs wage loss after 19 May 1996 was the result of his work-related injury as opposed to his illegal work status.
16. As a result of his injury on 1 August 1995, plaintiff sustained a ten percent permanent partial disability to his left arm.
17. On or about 3 August 1996, plaintiff began employment with Glendale Hosiery earning a lesser wage than he earned with defendant-employer. However, the evidence fails to show that this wage differential was the result of plaintiffs 1 August 1995 injury.
 ***********
The foregoing findings of fact and conclusions of law engender the following
 CONCLUSIONS OF LAW
1. By awarding compensation in this case, the Commission is not condoning plaintiffs misrepresentations to defendant-employer nor his counsels conduct in co-signing and filing documents with the knowledge that plaintiffs identity was false.
2. On 1 August 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. G.S.97-2(6).
3. Plaintiff is entitled to total disability compensation from 1 August 1995 through 28 January 1996. G.S. 97-2(9), 97-29.
4. The light duty position offered by defendant-employer in December 1995 did not show that plaintiff was capable of returning to suitable employment at pre-injury wages at that time. Irrespective of defendant-employers position that the job would have been available to plaintiff had plaintiff possessed proper immigration documentation, the job was not suitable employment under the law. Cf. Saums v. RaleighCommunity Hosp., 346 N.C. 760, 487 S.E.2d 746 (1997).
5. Plaintiff is entitled to partial disability compensation for the difference in his pre-injury wages and the wages he earned while working for Quality Molded Products from 29 January 1996 until 19 May 1996. G.S. 97-30.
6. Plaintiff is not entitled to wage loss benefits from after 19 May 1996 through 2 August 1996. G.S. 97-29.
7. As a result of his 1 August 1995 compensable injury, plaintiff sustained a ten (10) percent permanent disability rating to his left arm. G.S. 97-31(13).
8. Defendants are obligated to provide plaintiff medical treatment which is reasonably required to effect a cure, give relief or lessen plaintiffs disability. G.S. 97-25.
9. Plaintiff did not fraudulently obtain workers compensation benefits within the meaning of the Act. G.S. 97-88.2.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation benefits at the rate of $197.80 per week from 1 August 1995 through 28 January 1996, subject to a credit to defendants for payments made through 2 January 1996. This compensation has accrued and shall be paid in a lump sum subject to the attorneys fee approved in paragraph 4 below.
2. Defendants shall pay plaintiff partial disability compensation pursuant to G.S. 97-30 for the difference between two-thirds of plaintiffs pre-injury average weekly wage and two-thirds of plaintiffs average weekly wage while plaintiff worked for Quality Molded Products, subject to the election addressed in paragraph 3 below. Such compensation as has accrued shall be paid in a lump sum (if so elected), subject to the attorneys fee approved in paragraph 4 below.
3. Plaintiff shall elect whether to receive scheduled compensation pursuant to G.S. 97-31 for his ten (10) percent permanent partial disability to his left arm or partial compensation for his wage differential pursuant to G.S. 97-30, as stated in paragraph 2 of this Award. If plaintiff elects the scheduled benefit under G.S. 97-31, defendants shall pay plaintiff permanent partial compensation for twenty-four (24) weeks at the rate of $197.80 per week, subject to the attorneys fee approved in paragraph 4 below.
4. A reasonable attorneys fee of twenty-five (25) percent of the compensation due plaintiff under this award is hereby approved for plaintiffs counsel. As the compensation has accrued, twenty-five percent of the lump sum due plaintiff shall be deducted and paid directly to plaintiffs counsel.
5. Defendants shall pay all reasonable medical expenses incurred or to be incurred in the future by plaintiff as a result of his 1 August 1995 injury when the medical bills have been submitted and approved according to Industrial Commission procedures.
6. Defendants shall pay the costs.
7. The full Commission, in its discretion, denies plaintiffs motion for the assessment of deposition copy costs.
8. Defendants motion for sanctions is denied.
 S/__________________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_______________ THOMAS J. BOLCH COMMISSIONER
S/__________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER