***********
The Full Commission hereby enters the following Opinion and Award in accordance with the decision filed in this matter by the North Carolina Court of Appeals.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. An employee-employer relationship existed between the parties on or about May 24, 1996.
4. The plaintiff was injured by accident on or about May 24, 1996. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. The plaintiff's average weekly wage is $428.00, yielding a compensation rate of $285.35.
6. The parties stipulated into evidence the following Industrial Commission forms: 18, 19, 33, 33R and 60.
7. The parties stipulated into evidence as Stipulated Exhibit 1, without need for further authentication or verification, Defendants' Answers to The plaintiff's First Set of Interrogatories and Request for Production of Documents.
8. The parties stipulated into evidence, without need for further authentication or verification, medical records from the following providers:
• (Wilmington Orthopaedic Group;
• (New Hanover Regional Medical Center;
• (Coastal Orthopaedics;
• (Cape Fear Memorial Hospital;
• (Carolina Sports Medicine; and
• (Concentra Managed Care, Inc.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a 53-year-old female born August 5, 1944.
2. On May 24, 1996, the plaintiff was employed with defendant-employer as an outside marketing representative and had been so employed for three years. On that date, as the plaintiff was working in Shallotte and while making a cold call at the Food Lion, her right foot slipped and she fell down on her left knee and right arm. The plaintiff finished with her sales visit and left as quickly as possible because she was embarrassed. The plaintiff returned to defendant-employer and reported the injury to her supervisor. The plaintiff completed an Associate Statement, indicating that she had slipped and fallen and struck her arm and reported the parts of her body injured as knee and back.
3. The plaintiff presented at Cape Fear Hospital Occupational Health Services on May 29, 1996, where Dr. Sue Nelson treated her conservatively.
4. On July 3, 1996, the plaintiff was evaluated by Dr. Sutton at the Wilmington Orthopaedic Group, who continued the conservative treatment.
5. On referral from Cape Fear Occupational Health Services, the plaintiff presented to Dr. Kevin Scully on October 15, 1996, complaining of left knee pain. The plaintiff was diagnosed with a medial meniscus tear, which was surgically repaired by Dr. Scully on November 11, 1996.
6. The plaintiff did not miss any time from work between her May 24, 1996 fall and her November 11, 1996 surgery. The plaintiff did not return to work after her November 11, 1996 surgery until September 9, 1997.
7. On January 17, 1997, the plaintiff first presented to a medical care provider complaining of right shoulder pain. She was given a steroid injection for these symptoms, and on January 31, 1997, was diagnosed by Dr. Scully as having radicular symptoms with a possible ruptured cervical disc and subscapular bursitis.
8. The plaintiff remained out of work due to continuing problems with her left knee, and on April 10, 1997 underwent a second knee surgery.
9. The plaintiff was referred by Dr. Scully to Dr. Mark Rodger and Dr. Rodger saw her on April 17, 1997, complaining of neck, shoulder and arm pain. The plaintiff was diagnosed by Dr. Rodger as suffering from impingement syndrome or bursitis in the shoulder and degenerative disc disease in the neck.
10. On or about September 5, 1997, the plaintiff was released by Dr. Scully to return to work. Because the plaintiff continued to complain of pain and giving way in her knee, the plaintiff was released to return to light duty work. The plaintiff returned to work on or about September 9, 1997 working at the credit desk. The plaintiff was unable to return to her outside marketing job because that job required getting in and out of the car and because a replacement had been hired during her absence. The plaintiff began as a cooking demonstrator and was required to stoop, squat, kneel, bend to clean and sterilize the cooking table, pull out the cart and perform demonstrations. In January 1998, the plaintiff's knee gave out as she was stooping down, and she spilled the food on the floor.
11. The food demonstrator position exceeded plaintiff's physical limitations and light duty restriction. Thereafter, the defendant-employer modified the food demonstrator position for plaintiff by providing plaintiff with helpers who would perform the physical tasks plaintiff was physically unable to perform.
12. The plaintiff continued to have problems with her knee and on February 6, 1998, Dr. Scully indicated that the plaintiff retained a 7% permanent partial disability of the left leg. On that date, Dr. Scully placed the plaintiff under permanent restrictions of no lifting greater than ten pounds, no kneeling, no squatting, no crawling and no repetitive bending or stooping.
13. The plaintiff was paid temporary total disability compensation for all time she was out of work for her knee from November 11, 1996 through September 9, 1997.
14. Dr. Scully was of the opinion that the plaintiff's knee condition was directly caused by the plaintiff's May 24, 1996 fall.
15. On May 24, 1996, the plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer, an injury to her left knee.
16. As a direct and proximate result of the plaintiff's compensable injury by accident, the plaintiff was unable to engage in physical activities required by her former job beginning November 11, 1996.
17. The plaintiff returned to work for defendant-employer on or about September 10, 1997 in a credit application job. This job was sedentary and the plaintiff was able to perform this job. Unfortunately, this job was eliminated nationally.
18. The plaintiff then moved to the job of cooking demonstrator. This job required standing, kneeling, bending, and lifting more than 20 pounds.
19. Plaintiff received $11.40 per hour as a cooking demonstrator even though all other cooking demonstrators made $8.00 per hour.
20. The plaintiff was physically unable to do the food demonstrator job in that it required standing, kneeling, bending, and lifting more than 20 pounds. The plaintiff's knee gave out while she performed this job, causing her to fall. Dr. Scully wrote a note advising that the plaintiff needed a more sedentary job requiring fewer changes of position.
21. While the plaintiff worked as a food demonstrator, the plaintiff earned her pre-injury wage rate. Her overall earnings, however, were less given reduced hours and time she missed due to her injury.
22. The plaintiff never returned to work subsequent to leaving the modified food demonstrator position.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On May 24, 1996, the plaintiff sustained an admittedly compensable injury by accident to her left leg arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. The modified food demonstrator job held by plaintiff was modified by defendants to accommodate plaintiff's limitations in that that this jobs is not ordinarily available in the competitive job market. As such the modified food demonstrator job is not indicative of plaintiff's true ability to earn wages and is not suitable employment under the law. Accordingly, plaintiff has been totally disabled within the meaning of the Workers' Compensation Act since September 9, 1997, and continuing until such time as she returns to work in suitable employment at her pre-injury average weekly wage. Saums v. Raleigh Community Hsp.,346 N.C. 760, 487 S.E.2d 746 (1997); Peoples v. Cone Mills Corp.,316 N.C. 426, 342 S.E.2d 798 (1986); N.C. Gen. Stat. §§ 97-2(9) and 97-29.
3. As a result of her admittedly compensable injury by accident, plaintiff was temporarily totally disabled from September 9, 1997 and continuing. Plaintiff is entitled to temporary total disability compensation from September 9, 1998 and continuing. N.C. Gen. Stat. §97-29.
4. The plaintiff is entitled to have defendant-employer provide all medical treatment arising from her compensable injury by accident to the extent it tends to effect a cure, give relief or lessen the period of disability. N.C. Gen. Stat. §§ 97-25; 97-25.1.
5. Defendants are entitled to a credit for wages plaintiff earned in the credit manager and food demonstrator positions subsequent to 9 September 1998. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to the attorney's fee approved below and a credit owed defendants for wages earned by plaintiff, defendants shall pay plaintiff total disability compensation at the weekly rate of $285.35 from September 9, 1997 and continuing until such time as plaintiff returns to suitable employment at the same or greater wages or until further order of the Commission.
2. A reasonable attorney's fee of 25% of the compensation due under Paragraph 1 of the Award is approved for the plaintiff's counsel. 25% of any accrued sums shall be paid directly to plaintiff's counsel. Thereafter, every fourth check shall be paid directly to counsel for plaintiff.
3. Defendant-employer shall provide to the plaintiff all medical treatment arising from her compensable injury by accident to the left leg to the extent it tends to effect a cure, give relief or lessens the period of disability.
4. Each side shall bear their own costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER