The decision filed by the North Carolina Supreme Court established that plaintiff does not have the benefit of a presumption of total disability, but rather has a presumption of partial disability. The Court also held that it was plaintiff's burden to rebut this presumption regarding her claim for total disability. Finally, the Court found that defendants could rebut the presumption of partial disability by proving "not only that suitable jobs were available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations." (Quoting Saums v. Raleigh Community Hosp., 346 N.C. 760,487 S.E.2d 746 (1997).
In accordance with the decision of the North Carolina Supreme Court, the Full Commission has reviewed this matter based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar and the supplemental briefs submitted by the parties. Having reconsidered the entire record of evidence, the Full Commission enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in an Industrial Commission Form 21 Agreement for Compensation, which was approved by the Commission on 19 March 1993, in an Industrial Commission Form 26 Supplemental Agreement for Compensation, which was approved by the Commission on 23 May 1993, in a Pre-Trial Agreement and at the hearing on 18 July 1996 as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case. The parties are properly before the Industrial Commission and were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times herein.
2. State Farm Fire Casualty Company was the carrier on the risk at all relevant times herein.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an admittedly compensable injury to her cervical spine on 7 December 1992, as the result of which the parties entered into an Industrial Commission Form 21 Agreement for Compensation.
5. Plaintiff's average weekly wage on 7 December 1992 was $347.50, which yields a compensation rate of $231.68.
6. As a result of the admittedly compensable injury, plaintiff received temporary total disability compensation from 31 December 1992 through 7 March 1993 through the approved Form 21. Plaintiff returned to light duty work on 8 March 1993, following which she received temporary partial disability compensation pursuant to the approved Form 26 through 20 October 1993.
7. The parties submitted eighty-one pages of medical reports into evidence following the hearing on 16 July 1998.
 ***********
Based upon the entire record of evidence, and in accordance with the decision of the North Carolina Supreme Court, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-one years old with a tenth grade education. Plaintiff has obtained a GED, received a nurse's assistant degree in 1976 and a practical nursing degree in 1977.
2. Plaintiff worked for defendant-employer as a nurse from 1986 until October 1993. Plaintiff's job duties included cleaning examination rooms, placing instruments in the autoclave for sterilization, preparing insurance forms, photocopying patients' records, filing, assisting patients to examination rooms, performing laboratory work and using the telephone to speak with patients and to call in prescriptions to the pharmacy. Plaintiff's job required movements of her neck to use the telephone, file paperwork, copy records and to prepare insurance forms. Plaintiff also moved her neck to observe, assist and speak with patients.
3. Following her admittedly compensable injury by accident, plaintiff was initially treated by Dr. K. Stuart Lee, a neurosurgeon. Prior to her compensable injury, plaintiff had not had any injuries to her back or neck. Dr. Lee performed a CT-Scan and a MRI which revealed slight bulges at the C-6 and C6-7 levels with no evidence of spinal cord or nerve root irritation. Dr. Lee opined that plaintiff's problems were related to fybromyalgia or fibrositis.
4. Plaintiff was examined by Dr. Helen Harmon on 13 August 1993. As of that date, Dr. Harmon found that plaintiff was experiencing chronic myofacial cervical spine and right trapezius pain. Dr. Harmon assigned a three-percent (3%) permanent partial disability rating for plaintiff's cervical spine. Dr. Harmon also assigned a permanent twenty (20) pound lifting restriction and recommended that plaintiff avoid twisting and lateral motion of the cervical spine.
5. Dr. Harmon then referred plaintiff to Coastal Rehabilitation for a functional capacity evaluation which was performed on 7 September 1993. At the time of the evaluation, plaintiff continued to experience pain in her back, neck and right shoulder and was working full-time for defendants with a twenty pound lifting restriction.
6. The functional capacity evaluation did not suggest symptom magnification. On the pain drawing, plaintiff described pain at her lower cervical spine just to the right of the C6-7 level as well as pain in the right rhomboid region and right subocipital region. Plaintiff reported that her right arm often swelled after light exercise and with excessive activity. The results of the functional capacity evaluation placed plaintiff's physical demand level in the light category. This category is defined as being able to safely handle weight up to twenty (20) pounds occasionally and ten (10) pounds frequently.
7. On 20 October 1993, plaintiff resigned from her position with defendant-employer because she had experienced continuing neck, back and right shoulder pain since the date of her injury by accident. Plaintiff also had difficulty with sleeping as the result of her pain. This combination of problems caused plaintiff to become physically fatigued and depressed to the point she was no longer able to perform her duties for defendant-employer.
8. After tendering her letter of resignation, plaintiff inquired as to whether there was another, less stressful position available with defendant-employer. Defendants responded that there were no such positions available.
9. Dr. Randall Herman, a neurosurgeon, examined plaintiff on 17 February 1994. At the time of his examination, plaintiff continued to experience posterior cervical para-scapular, deltoid and bicep pain and some paresthesias in the middle, ring and little finger on her right hand. Dr. Sherman assigned a five (5%) permanent partial disability rating for plaintiff's cervical spine.
10. In March 1994, plaintiff found employment as a secretary with Saunders Sons where she worked two (2) to four (4) hours per week earning $37.53 per week. Plaintiff earned a total of $3,600.00 for the year 1994 working in this position.
11. Plaintiff sought further medical treatment from Albermarle Mental Health Center due to continued anxiety and depression resulting from her chronic pain. Plaintiff testified at the hearing on 16 July 1998 that she was referred from Albermarle Mental Health to Southeastern Neurology Group and Maryview Pain Clinic in Portsmouth, Virginia. Defendants were notified of this referral on or about 19 May 1994. On 3 June 1994, defendants requested the approval of the Industrial Commission to be relieved of financial responsibility for this medical treatment. The Commission approved defendants' request on 13 June 1994.
12. Following this action by the Commission, plaintiff submitted an Offer of Proof as provided by Rule 103(a)(2), of the North Carolina Rules of Civil Procedure. The offer of proof consisted of note from Southeastern Neurology Group, P.C. dated 16 May 1994 which stated "Admitted to Maryview Medical Center's Pain Management Unit for local myofascial pain syndrome involving right shoulder, arm and neck due to work related injury." Additionally, the offer of proof included a prescription from Southeastern Neurology Group, P.C. dated 3 June 1994 which stated "Physical therapy x 12 sessions myofascial pain right shoulder and neck." The offer of proof further consisted of a progress note from Southeastern Neurology Group, P.C. dated 19 July 1994 which states, "Barbara Saunders is a 49-year-old woman previously seen by me on the pain management unit with myofascial pain involving the right neck, arm and upper quarter."
13. Plaintiff testified at the hearing on 16 July 1998 that the medical treatment provided by Dr. Biondi resulted in the improvement of her condition. After considering the record of evidence and the offer of proof submitted by plaintiff, the Full Commission finds that the prior Commission Order denying treatment by these physicians was improvidently filed. The treatment provided to plaintiff by Dr. Biondi, the Southeastern Neurology Group, P.C. and the Maryview Pain Clinic should have been approved as it was reasonably designed to effect a cure or provide relief from plaintiff's condition which was caused by her compensable injury of 7 December 1992. Furthermore, the Full Commission finds plaintiff's testimony regarding this treatment and her symptoms to be credible.
14. Beginning on 5 May 1995, plaintiff began working as a ward clerk at Chowan Hospital in Edenton, North Carolina where she earned $6.05 per hour. Plaintiff resigned from this position on 17 September 1995 because she was no longer mentally or physically able to cope with the job due to her injury and chronic pain. Plaintiff earned $4,180.24 from her employment with Chowan Hospital.
15. Plaintiff's ongoing chronic pain and related symptoms were directly related to and caused by her admittedly compensable injury by accident of 7 December 1992.
16. According to her treating physicians, plaintiff reached maximum medical improvement on 21 September 1993.
17. As the result of her specific traumatic incident of 7 December 1992, plaintiff was capable of earning reduced wages during the period in 1994 she worked for Saunders Sons and from 5 May 1995 through 17 September 1995 while she was employed at Chowan Hospital.
18. Since 20 October 1993, defendants have not offered plaintiff any suitable work, nor have they provided her with physical therapy or vocational rehabilitation. The periods in which plaintiff was able to find suitable work at reduced wages since that date were the result of her own efforts.
19. Defendants have failed to produce sufficient evidence that suitable jobs were available to plaintiff from which she would have earned wages at or above her wage level as of the time of her injury by accident on 7 December 1992.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 7 December 1992, plaintiff sustained an injury by accident arising out of and in the course and scope of her employment as a direct result of a specific traumatic incident of the work assigned. G.S. § 97-2(6).
2. The Industrial Commission Form 26 Supplemental Agreement for Compensation, approved by the Commission on 23 May 1993, created a presumption of continuing partial disability in plaintiff's favor. SeeSaunders v. Edenton OB/GYN, ___ N.C. ___, 530 S.E.2d 62 (1999). In her claim for total disability, plaintiff had the burden of proof to rebut the presumption of partial disability. Id. Plaintiff has failed to rebut this presumption and, therefore, is not entitled further total disability compensation. Id.; G.S. § 97-29.
3. Defendants have failed to present sufficient evidence to rebut the presumption of continued partial disability raised by the approved Form 26 Agreement. See Saunders v. Edenton OB/GYN, ___ N.C. ___, 530 S.E.2d 62
(1999). Plaintiff was therefore entitled to the presumption of continued partial disability subsequent to 20 October 1993. Id. G.S. § 97-30.
4. As the result of her 7 December 1992 injury by accident, plaintiff is entitled to be paid by defendants temporary partial disability compensation at the rate of two-thirds of the difference between her average weekly wage at the time of her injury and the reduced wages she was able to earn subsequent to 20 October 1993 and continuing thereafter, subject to the statutory limit of 300 weeks. G.S. § 97-30.
5. As the result of her 7 December 1992 injury by accident, plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred, including the treatment provided by Dr. Biondi, the Southeastern Neurology Group, P.C. and the Maryview Pain Clinic. G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, and in accordance with the decision by the North Carolina Supreme Court, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary partial disability compensation at the rate of two-thirds of the difference between her average weekly wage at the time of her injury and the reduced wages she was able to earn subsequent to 20 October 1993 and continuing thereafter, subject to the statutory limit of 300 weeks. This compensation has accrued and shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
2. Defendants shall pay all medical expenses incurred or to be incurred as the result of plaintiff's 7 December 1992 injury by accident, including the treatment provided by Dr. Biondi, the Southeastern Neurology Group, P.C. and the Maryview Pain Clinic.
3. A reasonable attorney fee in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff herein is approved for counsel for plaintiff. From the accrued compensation, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff.
4. Defendants shall pay the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER