***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Pre-Trial Agreement along with its attachments, Form 18, Form 19, Form 28U, Form 33, Amended Form 33, Form 33R, all Form 62s (dated 1 June 1995, 25 March 1999, and June 1998), Order on plaintiff's Motion for Sanctions, defendants responses to plaintiff's Motion for Sanctions, clarifications of the Order by Executive Secretary, and any other stipulations that have been submitted by the parties are hereby incorporated by reference as though they were fully set out herein. Additionally, the Full Commission finds as fact and concludes as matters of law the following, which were agreed upon by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times herein.
3. Liberty Mutual Insurance Company was the compensation carrier on risk at all relevant times herein.
4. Plaintiff's average weekly wages were $419.52 per week, yielding a compensation rate of $279.69 per week at all relevant times herein.
5. Defendants accepted plaintiff's claim as an admittedly compensable injury by accident and paid plaintiff disability and medical benefits under the North Carolina Workers' Compensation Act.
 ***********
Based upon the competent evidence adduced from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 25 years old and had been employed by defendant-employer since 1995. On the date of injury, plaintiff was employed as a finish inspector, operating an open-slit machine. Plaintiff is right-handed.
2. On 27 April 1997, plaintiff sustained a compensable injury by accident while in the course and scope of his employment with defendant-employer when his right hand and arm were caught in the rollers of the open slit machine. Plaintiff suffered a severe crush injury to his right hand and arm, including a fracture of the ulnar and radius with shoulder involvement, necessitating emergency fasciotomy with skin grafting to the right arm. Plaintiff was taken out of work as a result of his injuries and the resulting surgeries.
3. On 13 May 1997, the parties executed a Form 21 Agreement for Compensation for Disability, which was approved by the Commission on 9 July 1997. Plaintiff returned to light duty work on 18 August 1997 with a lifting restriction of 5 pounds and limited use of his right arm, wrist and hand.
4. Plaintiff continued to receive follow-up medical care from Dr. Robert D. Teasdall after his return to work. Dr. Teasdall recommended that plaintiff undergo intense physical therapy and later work hardening. He further recommended that plaintiff wait for one year before undergoing tissue expansion or scar revision to his right forearm. Dr. Teasdall noted that plaintiff reached maximum medical improvement from the crush injury by 5 March 1998, but still recommended an FCE to determine plaintiff's limitations on use of his right upper extremity. Dr. Teasdall was of the opinion that plaintiff would possibly need future surgeries to remove hardware and for scar-tissue revision. Plaintiff continued to treat with Dr. Teasdall for pain in his arm, hand and thumb, limited motion in his elbow, and numbness and hypersensitivity in the area of his scar tissue. On 6 October 1998, Dr. Teasdall again noted that plaintiff was at maximum medical improvement and this time rated plaintiff with a 45% permanent partial disability to his right hand, and a 5% permanent partial disability to his right elbow.
5. As of 6 October 1998, plaintiff was being treated by Dr. Anthony DeFranzo for severe pain, weakness and other symptoms related to his compensable injury and had not undergone the skin grafting procedures necessitated by his injury. Therefore, as of 6 October 1998, plaintiff had not reached maximum medical improvement from all of his injuries.
6. Dr. Anthony DeFranzo performed skin graft excisions to excise his prior skin graft of the forearm on 16 November 1998, 8 March 1999 and 24 May 1999. Plaintiff returned to work on 14 December 1998 following the first surgery, and on 29 March after the second surgery. On 15 June 1999, approximately three weeks after the final skin graft surgery, Dr. DeFranzo released plaintiff to return to work at his regular job as of 21 June 1999. On 21 June 1999, plaintiff returned to work for defendant-employer in a "utility person" position. The position required some heavy lifting, but initially plaintiff had some assistance in performing this job. On 29 June 1999, plaintiff returned to Dr. DeFranzo due to swelling and pain in his right arm. Following this visit Dr. DeFranzo placed plaintiff on light duty for six weeks with restrictions that he lift a maximum of 20 pounds and frequently lift no more than ten pounds. At the next appointment on 10 August 1999, Dr. DeFranzo noted that plaintiff had stiffness and weakness in his right arm and plaintiff had pain with heavy lifting. Dr. DeFranzo took plaintiff out of work for one week, then continued plaintiff on light duty for two additional months.
7. When plaintiff was initially released by Dr. DeFranzo to return to his regular job on 21 June 1999, plaintiff was placed in a utility person position with an assistant to help with the heavy lifting. At some point during August 1999, plaintiff's assistant was fired and as a result plaintiff was required to do work beyond his restrictions by defendant-employer, including lifting shelving that weighed 35 to 40 pounds. Plaintiff began to experience increased pain and difficulties with his right shoulder.
8. Plaintiff did not report to work on 7 October 1999 due to severe pain in his shoulder and forearm. He left a telephone message with his supervisor explaining why he could not work and that he had an appointment with Dr. DeFranzo scheduled for 12 October 1999, but was trying to get an earlier appointment. He asked that his supervisor return his call. Plaintiff was unsuccessful in attempting to get an earlier appointment with Dr. DeFranzo, and he attempted two additional telephone calls to his supervisor on 8 October 1999, but was unable to reach him.
9. Plaintiff returned to Dr. DeFranzo on 12 October 1999 at which time Dr. DeFranzo noted that plaintiff had stiffness and weakness with his hypertrophic scar and that he complained of pain and difficulty lifting, as well as difficulty extending his arm above his head. Upon examination Dr. DeFranzo found that plaintiff was able to extend and flex his shoulder to the level of his head, but no further; his arm was still hypertrophic and the scar was still thick and painful. He recommended that plaintiff see Dr. David F. Martin, an orthopedist, for the problems he was having with his shoulder. Dr. DeFranzo indicated that it is not unusual for the shoulder to be injured in a roller injury like the one plaintiff had experienced because it pulls the whole arm in and can rip, sprain or strain some ligaments in the shoulder. He explained that sometimes the treating doctor is not aware of the additional injury to the shoulder and the injury is not symptomatic until the patient is back at work and having difficulty. Then, the patient is often encouraged to work through the shoulder pain. Dr. DeFranzo noted that plaintiff had been complaining of shoulder pain, which is why on 12 October 1999 he thought that it was appropriate for plaintiff to see Dr. Martin to have the shoulder checked. Dr. DeFranzo continued plaintiff on light duty for an additional six weeks, with the added restriction of limited overhead lifting.
10. On 13 October 1999, plaintiff presented his work restrictions to the human resource manager and told him that he had been referred to Dr. Martin for his shoulder problems. The human resource manager told plaintiff that he had three unexcused absences and directed him to go home and wait for a call. Plaintiff met with the human resource manager and the supervisor on 14 October 1999 and explained to them that he had missed work due to his injuries and his medical treatment related to his injuries. Plaintiff was told that absences required a written statement from his physician, which plaintiff had failed to provide by 14 October 1999. Plaintiff was notified on 15 October 1999 that he was being terminated from his employment with defendants.
11. On 4 November 1999, Dr. DeFranzo, plaintiff's authorized treating physician, signed a Form 28U Employee's Request that Compensation be Reinstated After Unsuccessful Trial Return to Work, placing plaintiff on temporary total disability due to the difficulties he continued to experience. At the time the Form 28U was completed and provided to defendants, plaintiff had already been terminated. At the time of plaintiff's termination, he was only capable of light duty, restricted work. Although Dr. DeFranzo did not recall issuing the Form 28U, he testified that the Form 28U did bear his signature and that it was either signed by him or by his staff at his direction. Defendant refused to reinstate plaintiff's temporary total disability compensation.
12. On 5 November 1999, plaintiff filed a Form 33 Request for Hearing seeking a resumption of his weekly benefits.
13. On 2 December 1999, defendants filed a Form 33R Response to Request for Hearing in which they contended that plaintiff was terminated from his employment "pursuant to company policy for reasons that anyone else would be terminated for, and is not entitled to a reinstatement of his benefits."
14. When defendants refused to reinstate benefits after being provided a properly executed Form 28U, plaintiff filed a motion with the Executive Secretary of the Industrial Commission asking that his temporary total disability benefits be reinstated. On 10 January 2000, Executive Secretary Tracey H. Weaver entered an order directing defendants to reinstate plaintiff's temporary total disability compensation from the date they received the properly completed 28U and to continue payment until plaintiff had returned to work or until further orders of the Industrial Commission. By letter dated 26 January 2000, defendants gave notice of appeal from this Order and filed a Form 33 Request for Hearing. Defendants' appeal did not stay their obligation to reinstate benefits upon receipt of the properly executed Form 28U.
15. Pursuant to the Form 21 Agreement, plaintiff has a presumption of continuing disability. Although plaintiff returned to light duty work with restrictions, on or about 18 August 1997 his condition persisted, causing him to miss time from work and continue to require medical treatment. Plaintiff did not reach maximum medical improvement from all of his injuries until 21 September 2000. Greater weight is accorded to the opinion of Dr. DeFranzo over that of Dr. Teasdall on when plaintiff reached maximum medical improvement.
16. On 23 May 2000, plaintiff was evaluated by orthopedic surgeon Dr. David F. Martin upon a referral from Dr. DeFranzo on 12 October 1999. Dr. Martin recommended physical therapy, and referred plaintiff to psychologist Dr. Jeffrey B. Feldman. Plaintiff presented to Dr. Feldman on 21 June 2000. Dr. Feldman diagnosed plaintiff as being in the lower portion of the moderate range of depression according to the Beck Depression Inventory, based upon his pain, unemployment, lack of direction, and feeling helpless and hopeless. Dr. Feldman continued to treat plaintiff through 12 July 2000. At that time, Dr. Feldman believed that plaintiff's physical therapy and the relaxation techniques plaintiff had been taught had greatly improved plaintiff's condition and his state of mind, and that plaintiff would not require future psychotropic medical management or psychological or psychiatric treatment.
17. On 13 September 2000, plaintiff underwent a Functional Capacity Evaluation at Wake Forest University Baptist Hospital. Based upon his FCE results, Dr. DeFranzo placed plaintiff on permanent light duty restrictions of maximum lifting of 20 pounds and frequent lifting of no more than ten pounds. On 21 September 2000, Dr. DeFranzo determined that plaintiff had reached maximum medical improvement and gave plaintiff a 30% permanent partial disability rating to his right upper extremity resulting from his compensable injury by accident. Plaintiff also retains severe scarring to his right arm and right leg, the site from which skin was taken for the skin graft, as a result of his injuries by accident.
18. The depression from which plaintiff suffered and received treatment from Dr. Feldman flowed directly from his compensable injury by accident.
19. Plaintiff would benefit from vocational rehabilitation services. Defendants have failed to rebut plaintiff's presumption of continuing disability created by the Form 21 Agreement. Plaintiff's termination was directly related to his absences caused by his compensable injury and did not constitute a constructive refusal to accept suitable employment. Defendants were required to reinstate temporary total disability compensation upon notice of plaintiff's unsuccessful trial return to work.
20. Plaintiff's average weekly wage at the time of the injury by accident was $419.52, yielding a compensation rate of $279.69 per week.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident on 27 April 1997 while in the course and scope of employment with defendant-employer. As a result of plaintiff's injury by accident, and pursuant to the Form 21 Agreement, he is entitled to receive workers' compensation benefits for necessary weeks. N.C. Gen. Stat. § 97-2.
2. Plaintiff's average weekly wage at the time of the injury by accident was $419.52, yielding a compensation rate of $279.69 per week. N.C. Gen. Stat. § 97-2.
3. In order for defendants to show that plaintiff constructively refused employment which would allow termination of benefits, defendants must present evidence that the plaintiff was terminated for misconduct or fault, unrelated to the compensable injury, for which a nondisabled employee would ordinarily have been terminated. Seagraves v. Austin Co.of Greensboro, 123 N.C. App. 228, 234, 472 S.E.2d 397, 401 (1996). Although the evidence shows that plaintiff failed to provide a written note from his physician excusing him from work, by 14 October 1999 plaintiff made three attempts to notify defendants by telephone of the reasons for his absences for physical problems related to his compensable injury and that plaintiff was still restricted to light duty work. Plaintiff saw his physician on 12 October 1999 and the records of treatment were available to defendants for the purpose of verifying the reasons for plaintiff's absences. Furthermore, on plaintiff's next visit to his physician on 4 November 1999, he was written out of work completely on a Form 28U Employee's Request that Compensation be Reinstated After Unsuccessful Trial Return to Work. Therefore, the greater weight of the evidence presented shows that the three days of missed work which resulted in plaintiff's termination from employment was directly caused by his compensable injury. In addition, plaintiff's inability to perform his job duties was caused by his compensable injury and his condition was exacerbated by defendants' requirement that he perform tasks beyond the scope of his medical restrictions. Accordingly, plaintiff is entitled to total disability benefits at the rate of $279.69 per week beginning 7 October 1999 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. Defendants cannot rely upon Dr. Teasdall's opinion that plaintiff was at maximum medical improvement by 6 October 1998 to justify the termination of benefits. In Russos v. Wheaton Indus., 145 N.C. App. 164,551 S.E.2d 456 (2001), disc. review denied, ___ N.C. ___, 560 S.E.2d 135 (2002), the Court of Appeals held that it is not error as a matter of law to award temporary total disability payments after an employee has reached maximum medical improvement. Once "a Form 21 agreement is entered into by the parties and approved by the Commission, a presumption of disability attaches in favor of the employee." Russos, 145N.C. App. at 167, 551 S.E.2d at 458. (quoting Saums v. Raleigh Community Hosp.,346 N.C. 760, 763, 487 S.E.2d 746, 749 (1997)); see also Knight v.Wal-Mart Stores, Inc., ___ N.C. App. ___, ___ S.E.2d ___ (2002). A finding of maximum medical improvement is insufficient to overcome this presumption. In the instant case, although Dr. Teasdall found plaintiff to be at maximum medical improvement on 6 October 1998 for his crush injury, defendants were aware that plaintiff had not reached maximum medical improvement from all of his medical problems caused by his injury as he continued to need skin graft surgeries which temporarily disabled him from work for brief periods of time, he was still restricted to light duty work by Dr. DeFranzo, and he continued to experience severe pain, weakness and stiffness which caused him to be taken out of work intermittently. Even if plaintiff had reached maximum medical improvement by 6 October 1998, defendants have offered no evidence which would overcome plaintiff's presumption of continuing disability. Conversely, plaintiff has shown that he was taken out of work by Dr. DeFranzo beginning 4 November 1999 due to medical problems related to his compensable injuries, that since reaching maximum medical improvement on 21 September 2000, plaintiff has been permanently restricted from lifting more than 20 pounds occasionally and frequent lifting of more than 10 pounds and that he cannot return to his pre-injury job. Accordingly, plaintiff is eligible for total disability compensation from 7 October 1999 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
5. North Carolina Gen. Stat. § 97-32.1 provides that upon an unsuccessful trial return to work, "the employee's right to continuing compensation under G.S. § 97-29 shall be unimpaired unless terminated or suspended thereafter pursuant to the provisions of this Article." As shown above, plaintiff's termination from employment does not provide a basis for the termination or suspension of plaintiff's benefits; therefore, plaintiff's benefits should have been reinstated automatically as of the 4 November 1999 issuance of the properly completed Form 28U. Even if defendants had a good faith belief that plaintiff's termination precluded further benefits, upon receipt of the 10 January 2000 Order of the Executive Secretary, defendants were required to obey the Order of the Commission. For this reason, defendants must be assessed a 10% penalty on compensation due plaintiff after 4 November 1999 when the Form 28U was issued. Additionally, plaintiff is due compensation for temporary total disability from 7 October 1999, the last day he worked, through 4 November 1999 as plaintiff was unable to work due to causes related to his admittedly compensable injury. N.C. Gen. Stat. § 97-18(g).
6. Plaintiff is entitled to interest at the legal rate provided in N.C. Gen. Stat. § 24-1 on the unpaid portion of this award dating from the date of the hearing before the Deputy Commissioner. N.C. Gen. Stat. § 97-86.2.
7. Plaintiff is entitled to the payment of the medical expenses incurred or to be incurred in the future for the treatment of the injuries sustained, including treatment for depression provided by Dr. Feldman, and any further treatment that tends to effect a cure, give relief or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
8. Defendants brought the current appeal to the Full Commission, and the Commission by this Opinion and Award orders defendants to continue payment of benefits to plaintiff, including compensation for medical expenses. Accordingly, the Commission may further order that plaintiff's attorney's fees be assessed to defendants as a part of the bill of costs in this action. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to counsel fees hereinafter approved, defendants shall pay to plaintiff total disability benefits at the rate of $279.69 per week beginning 7 October 1999 and continuing until further order of the Industrial Commission. All accrued compensation shall be paid in one lump sum. Defendants shall pay a 10% penalty on all compensation due to plaintiff after 4 November 1999.
2. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury when bills for same have been submitted to and approved through procedures adopted by the Industrial Commission, including treatment for plaintiff's depression provided by Dr. Feldman from 21 June 2000 through 21 July 2000, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. A reasonable attorney fee in the amount of 25% of the compensation awarded plaintiff in Paragraph 1 is approved and allowed for plaintiff's counsel. Defendants shall pay directly to plaintiff's counsel one fourth of the accrued compensation awarded to plaintiff; thereafter, every fourth payment of compensation shall be paid directly to plaintiff's counsel.
4. Defendants shall pay interest dating from the date of the hearing before the Deputy Commissioner on all benefits that were not paid in a timely manner as set by statute.
5. Defendants shall pay the costs of this action, including an additional attorney's fee of $800.00 to plaintiff's counsel pursuant to N.C. Gen. Stat. § 97-88 for defending this appeal to the Full Commission.
This the ___ day of June, 2002.
 S/_______________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________________________ THOMAS J. BOLCH COMMISSIONER
 S/_____________________________ DIANNE C. SELLERS COMMISSIONER