***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties.
3. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. An employee-employer relationship existed between plaintiff and defendant prior to and on August 9, 2002.
5. Defendant is self-insured and Key Risk Management Services, Inc. is the servicing agent.
6. Plaintiff's date of birth is May 18, 1940.
7. Plaintiff's compensation rate is $264.18, based on an average weekly wage of $396.25.
8. Plaintiff suffered an admittedly compensable injury on August 9, 2002.
9. On February 15, 2005, the parties entered into a Form 21 Agreement in which defendant agreed that plaintiff was entitled to ongoing temporary total disability until he returns to work or until further order of the Commission.
10. The parties agree that defendant does not owe any outstanding temporary total disability payments and that all of plaintiff's medical expenses have been paid pursuant to N.C. Gen. Stat. § 97-25.
11. The following items were stipulated into evidence at the Deputy Commissioner's hearing:
 a. The Pre-Trial Agreement, marked as stipulated exhibit 1. *Page 3 
 b. Medical records, Industrial Commission forms, and discovery responses collectively paginated 1-487, marked as stipulated exhibit 2.
 c. Additional medical records, Industrial Commission forms, and discovery responses collectively paginated 1-36, marked as stipulated exhibit 3.
12. The issue before the Full Commission is whether plaintiff is permanently and totally disabled pursuant to N.C. Gen. Stat. § 97-29.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the Deputy Commissioner's hearing, plaintiff was 66 years old. Plaintiff is a high school graduate and has some post-high school training in the field of electronics and television repair. Plaintiff's past working experience includes working in a knitting mill, a tobacco plant, 15 years with Westinghouse, one year with ATT, and 15 years at an electronics service center, which included the repair of televisions, video recorders, and satellite equipment.
2. Plaintiff testified that he loaned money to his son's business, Mobile Communications, and that he is listed as secretary of that corporation. However, plaintiff has never attended a board of directors meeting for Mobile Communications and has no role in running the business. Prior to his injury, plaintiff did help his son install radios, but he was never paid for his services.
3. Plaintiff began work for defendant in 1999 as a head custodian. His job duties included mowing and maintaining the grounds, cleaning and repairing buildings, and supervising four other custodians. On August 9, 2002, plaintiff sustained an injury to his neck arising out of *Page 4 
and in the course of his employment. Plaintiff was injured when the lawn mower he was operating turned over. Defendant accepted compensability for his injury and, pursuant to a Form 21 Agreement, defendant provides plaintiff ongoing weekly temporary total disability benefits.
4. Following the accident, plaintiff was examined on August 10, 2002, at Oldtown Immediate Care where he was diagnosed with contusions and abrasions to his face and back, and right foot and heel pain. On October 15, 2002, plaintiff saw Dr. James Day at Winston Internal Medicine and was diagnosed with rib pain. X-rays failed to reveal any fracture of the ribs and plaintiff was diagnosed with contusions to his chest and back.
5. On September 26, 2002, plaintiff was examined by Dr. Charles Taft at Orthopaedic Specialists of the Carolinas on referral from Dr. Day. Dr. Taft noted signs of degenerative disc disease and specifically, narrowing at the C5-6 and C6-7 interspaces with some mild anterior spur formation. Dr. Taft took plaintiff out of work.
6. On January 8, 2003, an MRI revealed multiple small disc protrusions and narrowing of the disc spaces at C5-6 and C6-7. Dr. Taft did not believe that plaintiff was a surgical candidate and referred him to Dr. David O'Brien for pain management and possible epidural steroid injections. Dr. O'Brien released plaintiff to return to light duty work with restrictions of no lifting more than 15 pounds, using a leaf blower, or emptying trashcans weighing over 15 pounds.
7. On March 7, 2003, Dr. O'Brien reported that plaintiff reached maximum medical improvement and he assigned plaintiff a 5% impairment rating. On April 11, 2003, plaintiff underwent a functional capacity evaluation (FCE). On April 16, 2003, Dr. O'Brien reviewed the FCE and found that plaintiff was able to work at medium-duty for an 8-hour day, lifting up to 70 pounds from floor to waist and up to 40 pounds from waist to eye level. Plaintiff was released to *Page 5 
return to work consistent with these restrictions. Dr. O'Brien further noted that plaintiff was able to drive without restrictions.
8. Plaintiff sought a second opinion with Dr. William O. Bell, a board certified neurosurgeon. Dr. Bell first saw plaintiff on June 12, 2003 for neck and right arm pain. Dr. Bell's impression was that plaintiff had a cervical strain and degenerative disc disease of the cervical spine, and that plaintiff could benefit from decompression surgery on his neck at C5-6 and C6-7. In September 2004, Dr. Bell performed decompression surgery, which revealed spurs but not a ruptured disc and was successful in relieving some of plaintiff's symptoms. On March 14, 2005, Dr. Bell reported that plaintiff reached maximum medical improvement with a 15% impairment rating of the cervical spine. Dr. Bell felt plaintiff would continue to be disabled from work.
9. At his deposition, Dr. Bell testified that although plaintiff is not prohibited from driving, it would be in his best interest not to drive more than ten miles at a time. Dr. Bell also testified that plaintiff is totally and permanently disabled based on his inability to maintain any one position for any length of time and his inability to sustain a 40-hour work week. Dr. Bell believed that it would be futile for plaintiff to seek employment given his age, current injuries, and physical restrictions.
10. On February 2, 2005, plaintiff began treating with Dr. O. Del Curling, Jr., a board certified neurosurgeon. Dr. Curling testified and agreed with Dr. Bell that plaintiff reached maximum medical improvement and had a 15% impairment to his back. At the time of his deposition, Dr. Curling continued to treat plaintiff. Dr. Curling expressed his opinion about plaintiff's ability to work as follows:
 Based on the physical restrictions, or physical limitations, based on his age, based on the medications, based on his previous job *Page 6 
history, I would consider it unlikely that he'll identify appropriate, suitable employment. Based solely on the physical limitations, I would expect that he would be capable of some activities, including work activities. But the reality is, based on all of those other factors, that it's unlikely that he will return to gainful employment.
11. Tiana Herbin, vocational consultant, believed that plaintiff was not likely to find employment near his home in rural Yadkin County. Ms. Herbin testified that from the labor market survey she conducted, most of the positions identified were not suitable to plaintiff's skills and training, which dated from 30 years ago. Ms. Herbin stated that plaintiff would need additional training to obtain any sedentary or light-duty position, and, considering his medical status, his age and local labor market, it was improbable that suitable job placement could be found.
12. Plaintiff employed Leanna Hollenbeck to provide a vocational evaluation. Ms. Hollenbeck reviewed Ms. Herbin's evaluation and agreed with Ms. Herbin that plaintiff was not a candidate for vocational services. Ms. Hollenbeck testified that based on the transferable analysis, there were no jobs to which plaintiff's skills would transfer. Ms. Hollenbeck stated that plaintiff is unemployable due to his age, physical restrictions, lack of marketable transferable skills, and the availability of jobs in the area and that it would be futile for plaintiff to seek employment. Ms. Hollenbeck testified that plaintiff did inform her that he occasionally sat in the office of his son's business; however, she was not aware he was listed as secretary of the corporation. Ms. Hollenbeck testified that she only looked at available jobs for plaintiff within ten miles of Yadkinville, but that if she had performed a labor market study for the greater Forsyth County area, it would not have changed her opinion that it is futile for plaintiff to look for employment. *Page 7 
13. Based on the greater weight of the evidence of record, the Commission finds that plaintiff has no wage earning capacity and is therefore permanently and totally disabled from any employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On August 9, 2002, plaintiff sustained an admittedly compensable injury arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. The parties entered into a Form 21 Agreement, which represents "an admission of liability by the employer for disability compensation pursuant to the Workers' Compenation Act." Kisiah v. W.R. Kisiah Plumbing,Inc., 124 N.C. App. 72, 77, 476 S.E.2d 434, 436 (1996), disc. reviewdenied, 345 N.C. 343, 483 S.E.2d 169 (1997). Once the Form 21 is approved by the Commission, a presumption of total disability exists until defendant successfully rebuts the presumption by showing that suitable jobs are available and also that plaintiff is capable of obtaining one, taking into account plaintiff's physical and vocational limitations.Saums v. Raleigh Community Hospital, 346 N.C. 769, 487 S.E.2d 746
(1997); Franklin v. Broyhill Furniture Industries, 123 N.C. App. 200,472 S.E.2d 382, cert. denied, 344 N.C. 629, 477 S.E.2d 39 (1996). In this case, defendant has agreed to pay total disability benefits until further Order of the Commission and has continued to pay compensation pursuant to N.C. Gen. Stat. § 97-29.
3. In order to be found permanently and totally disabled, a plaintiff must produce competent medical evidence that he is not able to perform gainful employment of any kind. Demery v. Perdue Farms, Inc.,142 N.C. App. 259, 545 S.E.2d 485 (2001). *Page 8 
4. As a result of his admittedly compensable August 9, 2002 injury by accident, plaintiff is permanently totally disabled from any employment and is entitled to receive permanent total disability compensation at a rate of $264.18 per week for the remainder of his life. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to payment by defendant of all medical expenses incurred or to be incurred as a result of his compensable injury by accident on August 9, 2002, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff permanent total disability compensation at a rate of $264.18 per week continuing for the remainder of plaintiff's life.
2. Defendant shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his compensable injury by accident.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel to be paid as follows: every fourth compensation check due plaintiff shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
4. Defendant shall pay the costs due this Commission.
This 22nd day of October 2007.
S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/________________ PAMELA T. YOUNG CHAIR
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1